Sierra v. Oakley Sales Corp. and Hopkins v. BCI Coca-Cola Bottling Company of Los Angeles Our understanding is as follows. Of course, the appellate has 30 minutes and you can reserve rebuttal time as you wish. The appellee has three counsel who I believe are going to argue. I have it here that Mr. Jacobi is going to argue for 11 minutes, Lena Sims is going to argue for 11, and Mr. Pincus is going to argue for 8. I can tell you it almost never works out that way, but I want you to know that you're responsible for your own division. If one of you goes on long and gets into the other's time, we're sorry, but just keep that in mind, okay? Because I know you each want to make your point. So let's proceed with the argument. Counsel, if you'll please state your name for the record and proceed. Good morning, may it please the court. My name is Kyle Nordra-Haugen. I represent all three of the appellants in these appeals which have been consolidated for purposes of the oral argument. I'm going to reserve a lion's share of my time for rebuttal since I have a lot of rebuttal people to address. Approximately how much time do you need? I expect that it will be around 20 minutes. I expect it to be 10 now. Before you get into it, let's just make sure that I have this right. It seems to me there's one central issue in all three cases, and that is whether the PAGA has been interrupted by Concepcion or whether it hasn't in the Arbitration Act, but there's one extra issue it seems in Sierra, and that is whether the agreement is unconscionable or not. Is that the only case in which that is an argument? Your Honor, I guess I would say that at times whether or not a PAGA waiver is valid or invalid, when it was declared illegal, sometimes the courts have referred to it as an unconscionable provision. Well, but as I understand Concepcion, it wasn't talking about that particular issue as unconscionable, and if you want to argue it is, that's fine, but it seems to me that really Sierra raises a true unconscionability claim at the end, saying procedural unconscionable and substantively unconscionable based on the, if you will, the negotiation getting into the claim. Is that the only case that that's alleged? Yes, Your Honor, and I would think that in my cases at this point, having had the benefit of Iskanian now, a lot of that briefing was done prior to Iskanian where we're not exactly sure what term they're going to use for a PAGA waiver, and this appeal and all three appeals is only focused on the PAGA waiver. All right. So whether that is… Correct, Your Honor. All right. I just wanted to make sure of that because I want to address all the claims in whatever we do. I appreciate that, Your Honor, and I apologize because this is an evolving sort of shifting argument or target. The law has been unsettled for quite some time here. We had Concepcion, and the district courts did as best they could for a while until we had Iskanian, and now we have the benefit of Iskanian, and I just wanted to give an update to the Court. There was a case entitled Bridgestone v. Brown that was up at the United States Supreme Court on a petition for writ of certiorari, and there the employer made similar contentions about Iskanian, and on Monday, June 1st, the Supreme Court denied the writ of certiorari there. Counsel, that also was true in Iskanian, right? That is true in Iskanian as well. So cert was denied in both Bridgestone and Iskanian. Under case law or just common sense, what impact, if any, does the Supreme Court's denial of a writ of certiorari have? I think we're trying to read tea leaves here about what the Supreme Court means in Iskanian, what they would do in this case. I'm sure that's part of your analysis, and I think these are helpful indicators about what the Supreme Court feels. If Iskanian was so violent of concepcion, and they were notified of it not once but twice, and they even requested additional briefing in Bridgestone, and they did nothing. And in my mind, Iskanian, I think that bolsters the argument that Iskanian is good, and if the Supreme Court doesn't think it's going to be good, they'll have the opportunity to do so perhaps yet another time in this case, after you guys affirm Iskanian. Did the court ask the Solicitor General's Office for the views of the United States in either case? Not to my knowledge, Your Honor. Okay. And we haven't had a government participant here other than the California Supreme Court at all. I understand. So after years of unsettled law, we have Iskanian. And I just want to give the court some practical coming from somebody who I'm not an appellate attorney. I'm on the street with employees. We have a lot of people in Los Angeles in that same situation. Thank you. I'm afraid I'm getting sold a bill of goods. I always start out saying I'm just his Idaho lawyer. I don't know anything. I kind of don't know my way around. I just hope you'll listen. So I hope you're going to tell me something now that's really going to grab me, though I appreciate it because I use the same approach. Well, I'm just telling you what happens on a day-to-day basis with these claims now in state court under Iskanian. Under Iskanian, what state courts are doing is ordering the arbitration of the individual disputes in accordance with the arbitration agreement, and they're staying the representative PAGA claim, which is the state's claim. And the state's claim is stayed pending the determination of the individual dispute. And, in fact, the arbitrator will even determine ultimately whether the employee is aggrieved. And then we can turn back to the state court and handle the state's claim as opposed to the individual claim of the employee. And this is what Iskanian noted. It said, Iskanian must proceed with bilateral arbitration on its individual damage claim, and CLS must answer the representative PAGA claim in some forum. And that's what I'm here today for. I just need a forum for this claim. Whether it's arbitration, I'm fine with arbitrating the representative PAGA claim. If that's not available, then I'm fine doing it in court. But there needs to be some forum for it. And the reason you suggest there needs to be some forum, I mean, I guess that's the real issue here, isn't it? Whether there really needs to be some forum. That's what Iskanian says. Well, I understand what Iskanian says, but I also understand what the Supreme Court has said in other cases, and I guess that's my worry. I looked at the EEOC versus Waffle House. Here is, in my view, the only time the Supreme Court has said someone is not out under the FAA. I mean, that's the big case. So I thought I better focus on that. I better say, okay, EEOC wasn't out. Is this a similar type situation? And so how similar is it? It's similar, and I think Iskanian addresses the issue pretty well about there is some difference, which is that the EEOC Waffle House case, it was the state's claim, but it was bringing victims specifically. It wasn't the state's claim. It was the nation's claim. I apologize. I mean, we got another case that says we don't even worry about state claims. But let's assume that we haven't. Where is it? I mean, the EEOC has 180 days to pursue their own claim, and if they pursue it, they're in charge of it. They don't get anything if somebody pursues their own. They're the master of their own case. They confer on the agency the authority to evaluate the strength of it. They decide it. None of that is here. Well, Your Honor, I think the important part is that here the state is the real party in interest. The state is bound by this result. Frankly, the state is the real party in interest is the question. Because the state does have a statute, but the state, as I understand it, gets a chance to say they're in or they're not. And if they say they're not in, they have no control. We're still, what control does the state have? They have the initial control. They have the initial control about whether I'll proceed myself. But after that, they're just the beneficiary. They take the money. That's the similarity to the K-Time. And they do take the money, Your Honor. That's the best. They get the money. It's a tax. I mean, I might even get back into Obamacare. It's a tax. The bottom line is it's a tax at best. If the state wanted to pursue the claim, we wouldn't be here. Because I don't think that the state would necessarily on their own be even allowed to come. I don't think. Let me follow up. I mean, I'm trying to understand why it's similar to EEOC, because the EEOC is the only time the FAA has let somebody out. I understand, Your Honor. There are other cases where the court has reminded, and this is Italian colors or the American Express case, where the court said, look, putting aside the effective vindication argument that was addressed there, it's a separate issue if we're denying a claim altogether. The Supreme Court has never said that arbitration can be used to deny a statutory claim altogether. Yes, they've said that certain procedures are unavailable in arbitration and are preempted. But they've never, and seven times they've repeated the same language from Mr. Bishi Motors, they've never kicked a claim out under an arbitration agreement. They've always said that arbitration is a fair and reasonable place for claims to be heard, and therefore as long as the claims can be heard there. Counsel, could I ask you to talk to us about the difference, if any, between PAGA and a QTAM action in the federal context? Justice Liu suggested that PAGA was, in effect, a QTAM action. There are, of course, many of them. As far as I know, there's been no rejection of a QTAM action in an arbitration context if that has been invoked by the defendant in the action. Can you discuss the, if you will, compare and contrast QTAM versus PAGA? I think there's a lot of similarities in that certainly the initial chance the state has on notice to do, to take control of the litigation, it chooses not to, and essentially that person is deputized. The same in QTAM. Yeah, exactly. So I think there's that similarity. I don't think that it's quite the same in that here the legislature has expressly chosen to use this deputization in order to handle what is a rampant wage theft abuse. I think Iskanian talks about $60 to $140 billion a year in wage theft that they just can't control. So I think there's a, QTAM is, it doesn't go quite far enough in terms of that this is a historic police power of the state because they're enforcing the laws and it's a tool. Let me get your help on this. If I understand, well certainly what Iskanian said, that the state had enacted PAGA primarily because there were insufficient funds available to provide enough employees for the wage and hour labor aspects of the government to enforce the laws fully and therefore they wanted to deputize private citizens to take this action. 75% of any money, well you present your claim. If they don't act within a certain period of time on their own, then you move forward. 75% of the money goes to the state. 25% goes in certain ratios to affected employees. And there's an attorney fee clause, which of course is of great interest to the plaintiffs bar in California, understandably. On a QTAM though, you have the relator who, depending on what kind of a claim you're talking about, is similarly trying to save or recover money from the United States where fraudulent payments have been made. It covers SEC, it covers Department of Defense, you name it. It's Medicare, it's all over the place. I see a lot of similarities to it. You seem to be suggesting that there really isn't all that much. No, no. I'm with Iskanian in that there is a lot of similarity here. They refer to it. There is one big dissimilarity that neither you nor Judge Smith want to talk about, I guess, and that is the private attorney cannot dismiss the action without the state agreeing, correct? This is true. We give notice. In fact, what happens here, which is different than there, here you just give it to the state. The state says no, and you just go do all you want to do, and you quit when you want, and you do what you need to do, and nobody gets in at all. In a key time action, you go to the state, they get a chance to say, and then you can go forth, but they can always intervene if they don't like what you're doing, and then when they get to the end, they consent to your resolution. Isn't that true? Yes, Your Honor, and a similar thing happens here. There's no consent by the state here. There's notice, Your Honor. At the end of every case, it says when you get authorized, they send a letter. It's a form letter, but it sort of tells you what you're going to do, and the letter says that you will give notice of any settlement or judgment in this action. That's all it is. You just tell them. Presumably, that's their opportunity to intervene. If they're not going to get any money, they ought to know. Presumably, that's their moment when they give notice and they have their opportunity. Does it make a difference what my colleagues just mentioned? Does it make any difference for purposes of what we're talking about, in other words, the effect of concepcion? Does it make any difference whether the state has control directly or indirectly in either setting? I don't think it does. I think what all the courts have focused on that have resolved it in favor of Viscanian is who the real party in interest is here. Now, just a minute. It doesn't seem to me that you can really just automatically say it doesn't make a difference if you look at the EEOC, the control that the EEOC had or didn't have in the case was a major part of Justice Stevens' opinion. The fact that the state, the United States, had the right to get in, they had the right to control, they had the right to do whatever they wanted to do, and you always had to get their consent. I think the important part in the EEOC that's different than this case is they were seeking individual damages for victims. That's not the case here. So it was very important for them to have this state aspect because it wasn't present in the type of remedy that was being sought. And I appreciate that, but then if you want to really talk about that, it seems to me that what we're talking about in the EEOC was it was a matter of consent, but in this particular matter, the one who is pursuing the case gave the consent in the first place. It isn't the EEOC who comes in. It isn't the state who comes in. If the EEOC or the state were coming in, that would be a different matter. But the one who gave the consent, because arbitration is, after all, a consensual agreement, is the one who said we're going to arbitration in the first place, and they're pursuing the action. So if we talk about the similarities and then the dissimilarities, it seems to me that EEOC points out, just as Stephen's suggesting, the EEOC didn't consent to anything. The EEOC wasn't even involved, wasn't a party to the agreement. Here, the one pursuing the action absolutely consented. I think there's a couple of distinguishing facts, which is that when that consent was given and he was an employee and he was consenting to have his individual disputes between the employer and the employee resolved in arbitration, which is still the case, what he didn't consent is to have the disputes of the claims of the state resolved in arbitration, and at the time he gave that consent, he was not a deputized agent of the state. In these cases, what Concepcion deals with is, of course, a variety of things in connection with arbitration. They want to make certain that the FAA is complied with. There seem to be two issues that are still out for purposes of this case. One is whether you've got all of the procedural formalities of a class action, which make arbitration really inconvenient and quite cumbersome, and the second is the high stakes issue, which we'll talk about in a minute. But for purposes of an arbitration, why is a PAGA claim any more cumbersome procedurally than just a typical action by an employee in an arbitration of another nature? That's exactly correct. It isn't any more cumbersome, and that's the point that Judge Chen made in Hernandez, and in fact, I think that belittles the argument that an arbitrator can't handle a complex case, sort of belittles it when it's a bilateral case, when it's a specific dispute about a specific issue. What the Concepcion court was concerned with was the findings of numerosity, typicality that were required for due process, the notice and the ability for third parties to intervene, you know, class members can appear. None of that occurs in PAGA. This is a dispute between the state and the employer only. Are you suggesting there are no bigger issues in that kind of a claim, PAGA claim? It seems to me that if you get into a PAGA claim, the administrators got to determine the number of employees affected, the number of pay periods of each employee, how the aggrieved employee would know the information that would bear the burden of proving the form of discovery allowed in making those determinations, whether the employer would be able to contest. I mean, those are all things that are outside of the normal arbitration of a claim. I don't think so because a lot of times in, like, let's say a complex commercial transaction, they often determine damages through multiple transactions, and that's what we're talking about here. And if you had a key TAM action in arbitration, all of these things would be really de minimis compared to the key TAM action possibly, right? I certainly imagine a key TAM action would be a lot more complex than this. These PAGA trials, the ones that have occurred, they aren't very long. They're not like class actions. They don't take months to try. They take a few days. A lot of times it's a discrete practice, and once that discrete practice has been adjudicated with respect to the aggrieved employee, then it's just a matter of determining it could be just addition or multiplication. Let's shift because you've only got nine minutes left here. Let's shift to the, if you will, high stakes question. One of the things that was mentioned in Concepcion is that an employer may bargain to have individual claims by an employee handled expeditiously and with some imaginary cap on it in an arbitration but doesn't bargain for a really big high stakes issue. Whether that's true or not, what is to be said of the argument that it's really up to the employer? If the employer gets a PAGA action and thinks it's a high stakes, the employer doesn't have to invoke the arbitration clause, does it? That's exactly what happened here, Your Honor. And in that case, they can go forward with all the normal protections that you find in civil litigation and appeals and the like, right? That's exactly what happened here where the arbitration agreement either excluded representative claims from arbitration or the defendants took the position that they weren't authorized to arbitrate a representative action, one of the two. And, of course, they reserved that right for themselves just like they would if the state came forward. It's no different if the state came forward and said we're going to deal with these labor code violations and they'd be handling them in court and they can do the same thing here. But can you distinguish that principle from the class action? That is, the court has said, it's bad, you can't vindicate your claim. Correct. In Discover Bank and Gentry, the argument was that you must then have class arbitration. And they were forcing class arbitration on people by striking the waiver and putting the class in. Here, the Iskanian argument allows the employer to take the representative claim and have it in court. I'd like to reserve the rest of my time. That would be fine. Thank you. Okay. Here we go. So, Mr. Jacoby, you're going to keep track of your own time, right? Yes. I'm sure you will do it well. Good morning, Your Honor. Good morning. Keith Jacoby for Luxottica. Jacoby, I apologize. It's like Jacoby and Myers used to be, right? Yes. Only better. Luxottica, Retail North America, and Oakley. Your Honor, arbitration agreements are federally protected contracts. And when the rules of statutory construction and contractual construction are used to interfere with the right to arbitrate, they are preempted. Nobody's saying you can't arbitrate a poverty claim. Well, it's very, very interesting because the appellant in this case is doing something I've never seen in my life. They're saying that their own client is unwilling to bring his personal individual claim, that the only claim he's willing to bring is a claim on behalf of other people. But you're not answering my question. My understanding, anyway, is in none of these three suits is the plaintiff saying, we don't want to arbitrate. Everybody seems to agree that you have an arbitration clause. You have the right to arbitrate. Nobody questions that. The real question is whether in other aspects of concepcion, requiring an arbitration of a paga claim somehow violates that case. Is that what we're really talking about? I think it's because the way paga is being used is operating. Paga confers no new substantive rights. Paga is an overlay of a penalty over preexisting labor code rights. Arguably, class actions are the same. It's a procedural right. You get whatever claims you have and you bundle them all up. Absolutely true. So think of the position that you're putting the employer in who contracted with the employee. The poor employer who wrote the arbitration clause, right? And under concepcion. I feel really bad for him. He wrote it just like AT&T wrote it in concepcion. And I think it is not within the spirit of the FAA to say that you could just simply litigate the paga claims because the paga claims subsume the whole of the labor code claims. Exactly what the parties bargained for, we're going to be in one forum, gets completely eviscerated because they will have to arbitrate the labor code claims and then go back into civil court and litigate those self-same labor code claims. There are no new substantive rights. They're going to have to do it all again. And that's exactly what they bargained not to do. I'd like to briefly. I think that if. Tell me, please. Tell me, please, where it says in any of these arbitration clauses that you can't be involved in paga and also litigate your own claim. Well, the arbitration. I didn't see that. The arbitration clauses say that the exclusive forum for resolving employer-employee disputes is arbitration. And they're saying let's involve, let's revolve both. We're going to do this representative claim, which is on behalf of the state, trying to vindicate labor rights. And I also have my own claim. So what's the matter with that? Well, a couple of things. First off, the employer agreed. Concepcion makes clear employers can agree pre-dispute to only act on their own behalf. That is what a class action waiver is. I'm only going to act on my own behalf. And now Mr. Sokob and Mr. Sierra, who agreed to that, are saying no, no, no. I'm going to advocate. I'm going to act on the state's behalf as well. That's not what he contracted to do. That is not enforcing the arbitration agreement it is written. It's completely eviscerating the arbitration agreement. I think that in Iskanian and other cases that have sided with Iskanian, they've developed these three or four constructs to try to avoid the enforcement of the arbitration agreement. And a closer look at this repackaging or reformulation of PAGA, I think it should all fall flat, frankly. And I'll try to explain it. You think it's a what? I think all these deconstructions just fall flat. They fall flat. That's what he said. The first repackaging of PAGA is that it is a key TAM action. It's obviously, while it may have some facial similarities to a key TAM action, in a key TAM action the harmed party is the government. The plaintiff relater is simply a witness. He's a very good witness. That's why the government is deputizing him. And can get up to 15 percent of the reward, right? But the harm is to the government itself. And here, arguably, the state of California claims that the harm is to its enforcement of labor laws that it believes to be in the public interest and on behalf of the employees of the company who are in California. And when the state of California says that and when Iskanian said it, what it's basically saying is that it's public policy, it's good public policy, or its inability to robustly fund its labor department is a means to circumvent the FAA. And that's simply false. That's what the Supreme Court said in Marmette, that even excellent public policy does not give way to the supremacy clause and the FAA. So it sounds like your entire position is Concepcion just preempts PAGA claims in the story. Is that right? My position is that Concepcion provides the guidance that compels Mr. Sokov and Mr. Sierra to pursue his PAGA claim individually. And it does exist individually. Both these plaintiffs can recover $100 to $200 a pay period. It can run into the tens of thousands of dollars. The only reason why they are taking the extraordinary position that they are not going to pursue their own client's claim because they want to pursue claims on behalf of others is because they are trying to avoid the arbitration agreement. But counsel, forgive me, Concepcion dealt with a situation where you have, the arbitration itself was really at issue. That was the big deal. And the Supreme Court made it very clear you cannot have legislation that would in effect ban or limit arbitration. We don't have that here. What we have is, what shall we call it, the eminence from the penumbra of Concepcion. And we're trying to read the entrails of that case to determine how it applies to PAGA because at least looking at the face of the Concepcion case, it doesn't really say anything about this. We're dealing with a new concept. Now, the Supreme Court is going to take it up whatever we do here at some point, and it will decide whatever it's going to decide. We're not very good in the Ninth Circuit at predicting what they're going to do. In fact, if we do it, they won't. Pretty much. Well, I would suggest that Concepcion has a lot more force than that because Concepcion does say that state policies, procedures, statutes that become obstacles to arbitrating are preempted. And I would suggest that... What's the obstacle here? Other than it might cost you more money. But all of these cases, even Italian colors, the court, Justice Scalia, holds onto the thread that this is a forum selection clause, that we couldn't say that merchants cannot pursue their antitrust claims. That would be wrong. That would be improper. But the fact that they can't afford to, well, that's unfortunate. But in this case... The obstacle is that by co-opting... Maybe they can't afford to. The obstacle is by co-opting the entirety of the Labor Code. And that's what PAGA does. PAGA is not some backwater statute. It's much broader than a key TAM statute. That covers one provision of the Labor Code. PAGA covers every single provision of the Labor Code. And it says for penalties that occur for violations of every single provision of the Labor Code, you can't arbitrate that. But would you be able to immunize yourself from the state law? I would suggest that is not the case at all for two reasons. One, the state can always pursue the claim. The state is not a party to this arbitration. They can always pursue the claim. And if the reason why they're not pursuing it is they can't afford it, or they choose not to pay for it, none of that holds sway. None of that trumps the supremacy clause, the FAA, the Constitution. The state cannot underfund its Labor Department and say that that is a reason to circumvent federal preemption. And the second reason why you're not buying immunity is because Mr. Sokob and Mr. Sierra are welcome to pursue their PAGA claims individually. And anybody in both the Sokob, in both the Luxottica and Oakley arbitration agreement, there is an opt-out provision. And that opt-out provision allows people to choose not to arbitrate. And any opt-out, it's not Mr. Sokob or Mr. Sierra, but I would point out that there are opt-outs that are litigating PAGA class actions against both of these companies right now. But that's also true of the employer, is it not, as I ask opposing counsel in connection with the high-risk situation. Any employer that says, oh boy, I've got some real potential liability here, I don't like this, all the company has to do is say, you know, we're not going to invoke the arbitration clause here. We're going to move forward in litigation. Well, I would suggest like any contract, it can be bilaterally revoked. What PAGA is being used as is a poison pill to unilaterally revoke the arbitration agreement. That's colorful. I'm sorry? That's colorful. If, for example, in a discrimination case, the employer decided not to invoke the arbitration agreement, they could. And the employee can decide to not invoke the arbitration agreement by suing. But if either party compelled arbitration, you'd be bound by the contract. Here they're trying to use PAGA to operate as a matter of law to void the contract. Void the contract? Well, wait a minute. I thought we were all in agreement here that nobody is saying you can't arbitrate this. You're saying it's not convenient. It's not what the employer originally intended to arbitrate this kind of action. But there's nothing in the agreement that says that you can't have an arbitration, is there? I would say that by forcing the employer to litigate all of the labor code claims under PAGA civilly and pursue. . . But, counsel, let's be realistic here. You talk about all the labor claims. What happens is the plaintiffs will come up with a claim, whatever it is, overtime. You heard a case earlier today about that very nature. It's not the entire world. It is some portion of the labor code they claim is violated. You have a forum, the arbitrator, if you choose, who's going to handle it. Maybe it's complex litigation, but the AAA loves that. They have all kinds of things. We have international arbitrations, things between nations. It works just fine. So what's the problem? I would just suggest the problem is that I'm going to cede the rest of my time to my colleagues. I don't have any more time. I would suggest the problem is that if this court were allowed the state of California to circumvent arbitration agreements by putting the labor code under the umbrella of PAGA, there would be absolutely nothing preventing the state from amending PAGA to cover all claims in the California code. Say PAGA covers claims in the government code. But that's afraid of horribles. Justice Scalia, of all people, doesn't like PAGA. They're horrible. Discrimination claims are essentially labor code claims, but they're found in the government code. So I think once you adopt this principle that the state can carve out certain claims and render them non-arbitrable, then there is no bound to that, and I don't think that's what the FAA or the Constitution permits. And I'm going to allow the rest of my time to my colleagues. Very good. Thank you, Mr. Tacomi. So this is Ms. Sims, right? Yes. Very good. Good morning. May it please the Court. I want to refocus or focus on the arbitration agreement that Mr. Hopkins signed because it's a central and primary purpose of the Federal Arbitration Act to ensure that agreements are enforced as they are written. Mr. Hopkins signed an arbitration agreement in which he promised that if he had a dispute with BCI arising out of his employment, that he would resolve that disagreement in arbitration on an individual basis and that he would do so without complicating procedures by incorporating other employees' disputes. Whatever dispute he had with BCI, it was between him and it was between BCI. That's what the agreement says. Then you get to the issue of public policy. Clearly, Concepcion makes clear that if you have public policy that bans arbitration or says you can't have arbitration as the Discovery Bank rule had and so on, you can't do that. That's very clear. But in this situation, you have a strong public policy of the State of California, as articulated by Justice Liu in Iskanian, that this is a very important public policy. You cannot allow an employer in this case to, with impunity, violate labor laws. I'm using a hypothetical because I know no employer would want to do that, of course. They can't wholesale violate the law and for want of public funding, they get away with that. They're saying this is very important to us. We don't have the funds, so we're going to deputize people to go forward. That's not what Concepcion talked about. That's nothing like what they talked about. Again, we've got some statements about things maybe a little different than Concepcion that we're wrestling with, like the high risk, like the similarities to class actions. But the fact that the language says what you quoted, and I admit that it does, you have a clear conflict between something that's violating California public policy and what is written there. So would you tell me, please, why Concepcion says that in a situation where arbitration is not banned in any way, in any way, that that public policy is preempted? Because, Your Honor, the Federal Arbitration Act doesn't care about California's public policy. I know it doesn't, but neither does Concepcion say that you cannot arbitrate a pocket claim. Why? The arbitration agreement in this case reflects Concepcion's embrace of bilateral arbitration under the Federal Arbitration Act. Get that. So it's an odd position that we are in here because my client has moved to compel arbitration of all of Mr. Hopkins' individual claims, including his individual pocket claim. And it sounded to me like counsel for Mr. Hopkins concedes that Mr. Hopkins has an individual pocket claim. Is the case law clear on that, that you can't have an individual pocket claim? There is no binding authority. And, in fact, the Esconian court declined to address that issue and said that it was irrelevant for their purposes. There's no binding authority saying that Mr. Hopkins cannot pursue an individual pocket claim in arbitration or in court, anywhere. So it's interesting that Mr. Hopkins' counsel stands up and says, my client is only pursuing a group claim under pocket. And that's why there's a waiver of his substantive rights. He's adopted a position that nobody says he has to adopt. The reason he's done it is out of strategy, not because the law says he has to forego that. Mr. Hopkins, in our view, has an individual claim under PAGA. He may call it a representative claim, using the language from Esconian, which I think is misleading when you apply it retroactively. Under the agreement, it's clear that representative. Justice Liu has always spoken highly of you. I don't mean any disrespect to the court. But Mr. Hopkins' arbitration agreement refers to representative action waivers in the same breadth as class actions or collective actions, meaning any time you get a group of people together and you try to aggregate their claims and pursue them all at once, that comes with complications. There is no question, counsel, that these arbitration agreements that are before the court today, all of them ban an employee from being a representative in a representative action. That seems to clearly be a clash with PAGA. But what we're dealing with here is, does Concepcion say that when you have a situation like these cases where nobody says that the PAGA claims can't be arbitrated, nobody, the only question is, do the entrals of Concepcion, and in my view, the complexity and the high risk, somehow reach out and also ban these kinds of actions? Because otherwise, you've got clear public policy that Concepcion and its progeny don't touch yet. Now they may, they probably will, but they haven't yet. Do you agree with that? And Your Honor is referring to group claims under PAGA. Correct. Okay. Do you agree with that? I do agree with that. I think it's correct that the problems that the United States Supreme Court had with group actions in arbitration, which were talked about in Stolt-Nielsen before Concepcion, apply equally to PAGA claims. But why? I mean, a class action, as was previously discussed, you've got issues of commonality and numerosity and whether you've got the right counsel and certificate. You have none of that. None of that with PAGA. Not at all. I frankly wish you would suggest why, because that is a big issue to me as well. Why is this any different? Take this particular case, Your Honor, and the claims that are alleged. This is a misclassification case. Misclassification claims involve determination of whether or not, in the case of a group PAGA action, each individual aggrieved employee was misclassified for each pay period that they were employed during the statutory period. And misclassification in California means you look at what did the employee actually do during his or her work day each pay period. Did he or she spend more than 50% of their time on exempt or non-exempt duties? That's the question. That is a highly intensive factual inquiry. It's very difficult in class actions, and it would be equally difficult in a PAGA claim to go through that level of proof that would be needed and the evidence that would have to be But you would have that with any case involving a substantial amount of money. You could have a single executive that may be making $30 million, $40 million, and there's a breach of contract and claim of sexual harassment or whatever. You could have all kinds of complexity, which is handled routinely, routinely in arbitration. True. What's the difference? I would suggest, Your Honor, that when the parties to that arbitration agreement that you're referring to, that they would have assessed that risk going into the deal, and they would have known that given the risks or the types of claims that are being allocated to arbitration. After they go into the deal, in other words, as I ask opposing counsel, or I guess Mr. Jacoby, can't an employer who presumably the employer knows how to evaluate its own best interest, and if it has a claim, a PAGA claim, and says, boy, we've got some risk here, I don't think we ought to invoke arbitration. We want to be able to appeal. We want to be able to have the protections of litigation. What's wrong with that? Why doesn't that allow the employer to avoid high-risk situations about which the Supreme Court expressed concern? I would suggest that both parties to the arbitration agreement should be able to evaluate their risks before they sign it. In this case, Mr. Hopkins, I want to point out. Or what about afterwards? Before they sign it. Mr. Hopkins is a two-time college graduate. He's a retired military, retired from the military. He's a smart man, he's an adult, and he has the full capacity to enter into agreements. He perhaps does. But would you agree that everybody who signs a phone contract, as in Concepcion and AT&T, has similar qualifications? I do. We hold people to contracts all the time. That's the very principle of contract law. If you have somebody who, say, comes here and has virtually no education at all, maybe can't even read or write English, and they sign a phone contract, are you saying that they are perfectly capable of understanding and vindicating their rights? Well, whether somebody can read or ‑‑ if somebody doesn't read English, then presumably they would not be able to read and understand the agreement. That's not ‑‑ I think that hypothetical is far afield from this case. But if they sign a phone contract and they want a phone, that's what they're doing. Well, we're not really in phone contracts here. We're not? We're in a labor dispute. True. We're in a labor dispute. I mean, Concepcion applies pretty widely to a lot of agreements. I don't know that the phone agreement is exactly it. I just wanted to interject. I want to get to AT&T. The arbitration agreement in question here is a one‑page, very simple form. The language is plain language. It's very plain, very simply put. And I don't think there has not been any contention in this case, nor could there be at this point that Mr. Hopkins should not be held to his bargain because he didn't understand what he was signing. Speaking of high stakes, he had one choice, no job or sign the agreement, right? I mean, it was high stakes to him that he had to sign. It wasn't negotiable. That's ridiculous to think that it was negotiable. Well, the point that Your Honor brings up goes to procedural unconscionability. And as counsel for Mr. Hopkins conceded at the beginning of the case today, that's not an issue here today. Of course, under Armendariz, you look at both procedural and substantive unconscionability. And you have to find both to not enforce the agreement. Well, there were three things that Justice Scalia talked about. One was the efficiency of arbitration. The second was that it's not suitable for class actions. And I get that. I think there's at least a fiction that arbitration is more efficient. But what about the high stakes? That is, how many employees does your client have? And why is it such high stakes when there are lots of high stakes arbitrations? Why is that such a factor here? High stakes is a factor because when the parties agreed to arbitrate claims individually, to bilateral arbitration, and that was the party's expectation, they also gave up a right to appeal. It's a you get something and you give something, right? So they gave up the right to appeal, but they're going to resolve the claims individually, and the risk of that is less. And I apologize. I would talk more, but I've run into Mr. Pincus's time. Thank you very much, counsel. Well, we know that you argued the case before the Supreme Court. So presumably you know all things connection with Concepcion. Well, I wouldn't make that claim at all, Your Honor. Thank you, and may it please the Court. I wanted to start out by answering some of the questions that the Court has had. First of all, I think it's important to understand that Concepcion was in precisely the same posture in this case. In that case, the plaintiff said, we're happy to have class procedures in arbitration or class procedures in court. In fact, in the first paragraph of the opinion, Justice Scalia framed the question before the Court as we consider whether the FAA prohibits states from conditioning the enforceability of arbitration agreements on the availability of class-wide arbitration procedures. And what the Court decided was class-wide procedures were antithetical to arbitration. And in that case, you were talking about a full-blown class action with all of the things we talked about were with commonality, who got the right counsel, etc. All of the Dukes' issues, right? All of those issues were there. But I think it's important that the interest that the Court was vindicating, as this Court said in the Conniff decision, which was, I think, one of the first decisions this Court issued after Concepcion, it said Concepcion observed that individualized proceedings are an inherent and necessary element of arbitration. So what Concepcion was saying was, sure, the class action has one named plaintiff, but this is really an aggregate proceeding, and it violates this rule. And I think it was using all of those factors to show that it was an aggregate proceeding. This kind of claim is precisely the same kind of aggregate proceeding. It is not just these individual people's PAGA claim for the violation with respect to them. With respect, Mr. Pincus, though, the PAGA claim and the procedural requirements, the due process requirements, if you will, that encumber normal class actions are simply not part of a PAGA claim. How could the Supreme Court have been referring to a PAGA-type claim in Concepcion? I think what – well, I think obviously it was dealing there with the particulars of class actions. Right, of course. But I don't think it was dealing only with class actions. I think, if I may, if California enacted a rule that said we will only enforce arbitration agreements if they allow the aggregation of up to ten claims, that's not a class action, but that surely would be invalid under the FAA because individualized arbitration is something that the FAA protects. And it would try to control the arbitration proceeding itself, which I think Concepcion clearly says you can't do. But here what's happening is these are the – the arbitration would have to try the question of whether there was a violation with respect to an entire class of people. The class could be 200 people. It could be 200,000 people. So that introduces the very kind of complexity that a class action introduces, and it – maybe not all of the procedures, but what it introduces, and it seems to me what's critical to my aggregate individual claim example and to Concepcion, is it introduces into the arbitration the obligation to try multiple wrongdoings. So I think – But with respect, counsel, is that what Concepcion said, multiple – I think that was at the key. You're implying that, but that's not what they said. No, I think – I think that Concepcion relied on the analysis in Stolt-Nielsen, and Stolt-Nielsen talked about the – trying the claims of multiple parties. And that's essentially what this – as one of the factors that Stolt-Nielsen identified as why arbitration was antithetical – why class proceedings was antithetical. And this is exactly the same thing. It's trying the claims of multiple people. So I think – Can I ask you something slightly different? Admittedly, QITAM and PAGA are not the same, but would you agree that there is nothing in the FAA that would bar an employee from filing a QITAM action in an arbitration? I think if an employee wanted to arbitrate a QITAM action, that would be fine, because the QITAM action is representing one party, the United States, if we're talking about federal QITAM. Correct. It is not representing the 50 states. But it could be extremely expensive. Like, if you're an employee of, say, an aerospace company, and say the employee on a whistleblower basis thought there was a billion-dollar overbilling, that's pretty big stakes, right? Your Honor, I think the factors – clearly there can be individualized claims that are very high stakes. There recently was an arbitration, I believe in the state of Nebraska, in which the arbitrator awarded, I think, several hundred million dollars in damages and punitive damages. So it's not the size. Obviously, all of the arguments Your Honor is making are also true with respect to class actions. Class actions can be small. I want to be sure I understand. You're saying it isn't the potential of the award, it's the multiplicity of people that's the issue here, only that. Is that right? I think what Concepcion was saying was even though the class action mechanism has one named plaintiff and therefore in some sense it's one-to-one, it really isn't because standing behind that one plaintiff is lots of complexity in terms of – and that complexity, although it's true in every case, that may not mean that the size is greater. But arbitration clauses, of course, are designed ex ante to deal with a run of cases. And so what the people who are signing the clause are saying is, okay, we are willing to forego the protections of the court system, et cetera, for speed and efficiency with this range of cases. Because the run of these cases, if we say no collective actions, are going to be on average smaller. Some will be bigger because they're individual. But I think what the FAA says is what's antithetical to arbitration is allowing that aggregation. Can I ask you one more question? I know we've run you over time, but it's – I asked your colleagues about the concept of if there is high stakes. You didn't seem to be as concerned about that. But if there are high stakes, doesn't the fact that the employer can decide not to invoke the arbitration clause protected in terms of appeals and all of the other due process benefits that come with litigation? I don't think so, Your Honor, because what's being bargained for and what the FAA protects is an agreement. What the FAA says is the arbitration agreement has to be enforced according to its terms except. And there are basically two exceptions. One is if there's a generally applicable principle of state contract law that would invalidate it, then that can be applied. But even a generally applicable principle of state contract law can't be applied if it is requiring something that is antithetical to arbitration. And so what the FAA protects is the ability to enter into an arbitration agreement. And what California says is sure, we'll enforce your agreement, but only if you agree to allow these collective actions to be arbitrated. And that is something that I think is directly contrary to concepcion. If I may make two other points. Let me just ask my colleagues, do either of you have other questions? Well, I have one. Please. I'm reading from Italian Colors. It says, but the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy. But you have the elimination of the right to pursue that remedy because all the employees in this company have signed this arbitration agreement. I don't think so, Your Honor, for three reasons. Well, I'm happy to assume that they've all signed. But I think it doesn't eliminate the right to pursue the remedy for three reasons. One is I think all of the companies concede here that the employees can assert an individual PAGA claim. In other words, they can say, with respect to what happened to me, I can collect the PAGA procedural device of however many hundreds or thousands of dollars it is. Can they get attorney's fees? And they can get attorney's fees, absolutely. That's interesting. Can they take that award and go into state court and ask for the penalties? With respect to other people? No. I don't think they could do that because they've signed an arbitration agreement. But that's also true in the class action context. It's exactly the parallel to Concepcion. In Concepcion, the Concepcion's could bring their claim and vindicate it in arbitration. Here, each of these plaintiffs can bring their claim and vindicate it in arbitration. The second reason is the state retains the right to vindicate its claim. And the third reason is, as this Court said in Ferguson, this whole vindication question really only relates to federal claims. I don't think the Court has to reach that for the other reasons. But that whole doctrine, as Justice Kagan said in her dissent in Italian Colors, if this were a state case, we wouldn't worry about it at all because we don't care about the ability to vindicate state claims. She was doing what lawyers do. They distinguish other cases. I don't know that. Well, this Court in Ferguson actually adopted that principle as the law in terms of applying Concepcion to state claims. Questions? No. We could go on forever, and we very much appreciate your argument. Let's hear the rebuttal here, and then we'll wind up. Thank you, Your Honor. I do want to clear up a couple misconceptions here. This fiction of an individual paga, it's a fiction. And as Kanian says, it's not merely semantic, the role that the appellants have here. It's not merely semantic. They, in fact, represent the state. It's inherently representative. Even if there's only one employee, they're still representing the state. These civil penalties belong to the state, and the state has elected to share 25 percent to use capitalism in order to ensure that the labor code is enforced. And I think the other important point that I heard that I think is incorrect is that there's an aggregation of claims here. That's not true. Paga claim is a single statutory claim that's brought on behalf of the state and states' right versus the employer. The claim would be no different if the state were sitting here with an agency head bringing the claim as it is with the appellants here. It is one claim. There's no aggregation of other people. The fact that violations may have occurred with other people is simply how the damages or excuse me, not the damages, the civil penalties are calculated. That's just the calculation method. My colleague, Judge Smith, mentioned the fact that basically the state steps out once the initial notification has been given and really maintains no further control over it. What difference, if any, does that make in our analysis of the FAA's application to this case? I don't think it should make a difference, Your Honor. I don't think that something would be preempted because of that fact alone. Well, I appreciate that, and I guess my colleague wants to ask you the easy question. The question is not that, but the question is I have seen, now I have a statute in front of me that's been enacted by the Congress. The Supreme Court has suggested there are no exceptions except one. That one exception was the EEOC, and they made that exception based on certain distinguishing characteristics in Justice Stevens' opinion, and one of those was the very question Judge Smith asked. Now, if you look at Concepcion, you can say what you want to say, and maybe that's all you want to focus on. But we're not looking at that. We're looking at the only time there's been an exception, and what were the distinguishing qualifications, and that's why the question is bigger than what you just answered. So I hope you'll step back and think about that just a little bit. The control was a big issue in the EEOC case. I think here the control issue is sort of delineated by the law. Delineated by what law? The laws that PAGA has dictated. Okay, then I understand your answer. Let me follow up with a different one. I know it's not as intelligent as Judge Smith's question, but let me try. The Fourth Circuit held in United States v. Bankers Insurance Company that the government could be compelled to arbitrate a false claim action over the objection of the government. Obviously the government didn't control that, and yet it went forward. What, if any, impact should that have on our consideration? I think it comes back to what you said, that there is no hostility here to arbitration. It's possible for a PAGA claim to be arbitrated, just as a KTOM claim can be arbitrated. It's possible for a claim that has multiple transactions to be arbitrated, just as the defendants have argued here with multiple violations. So I think it just shows that what arbitration at its core is, it's a form selection clause. It's not a liability exoneration clause. And there are many, many legal violations that are actionable under PAGA that are not privately actionable. For example, there are claims relating to timeliness of payment that wouldn't be actionable in a court for an individual. There's violations of workplace safety that can be brought under PAGA that aren't actionable except as a representative of the state. And so those are very important issues. They aren't present here because this case involves overtime. But I think that's an important consideration when we think about what's being preempted here  And with a state enforcement agency who said, look, we got gutted by the budget. We're using this method to delineate what things they can bring on their behalf. They give us notice. We have the opportunity to intervene. We're sharing a portion of the funds. And we require notice of any settlement or judgment. Now, I personally have not had them intervene. I have heard stories of it occurring in other cases. But I don't have personal knowledge of that. But PAGA is a fairly new statute. I think it's 10 years old or something. And it's only become more to the forefront recently. So I don't think we exactly know what kind of control in certain situations the government would have if it decided to intervene. I don't doubt that they would be allowed to intervene if they wanted to. And if I could just hearken back to the Ninth Circuit's decision in Bauman, class actions and PAGA are fundamentally different. They aren't the same thing. They aren't the aggregation of claims. No individual is being bound by a PAGA claim except the state of California. And I think that is an important consideration. And I think that's what, like, undergrids the Iskanian decision. I think it's also important to look at the concurring decision in Iskanian because I think there's some important issues there as well that I think the majority would agree with, but they didn't have to go that far because they found it simply outside a dispute between the employer and the state simply outside the arbitration agreement. Let me ask my colleagues if either has any more questions. Thank you very much. We thank all counsel. We recognize the importance of this case. We also recognize that whatever we decide, someone will call it en banc, may or may not be successful, and then the Supreme Court may consider whatever we decide to do. So we're very much aware of that. But your fine argument was very helpful to us on all sides. We thank you, especially those of you who have traveled from long distances. And we bid you a happy day. And the court is now in recess.
judges: Lefkow, Smith, Smith